**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| **UNITED NATURAL FOODS, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No.: 1:21-cv-420** |
| **INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 414,** | |
| **Defendant.** | |

## <u>COMPLAINT</u>

The hangman's noose "is pregnant with historical and cultural meaning" and "is a symbol not just of racial discrimination or of disapproval, but of terror." *Curry v. SBC Communications, Inc.*, 669 F. Supp. 2d 805, 834 (E.D. Mich. 2009).  The noose is not just a disgraceful relic of America's past.  As this case illustrates, it remains a part of our present day.

Plaintiff, United Natural Foods, Inc. ("UNFI"), terminated Jerold Martin (White) after completing an investigation into a complaint by Sidney Fields (African American) that Martin had loudly stated he placed a noose on the forklift of a former co-worker.  The investigation (which also addressed subsequent acts of retaliation directed at Fields and another witness) established that Martin not only made this

1

violent and racially offensive statement; he lied to investigators about having done so.

Defendant, International Brotherhood of Teamsters Local 414 ("Local 414"), filed a grievance alleging that Martin was not discharged for "just cause" because he was not discharged "within ten (10) calendar days of the notice of the occurrence causing the discipline" under Article 18.03 of the Parties' collective bargaining agreement.  Local 414 made this claim despite (and in breach of) a signed Settlement Agreement (ending a strike) in which Local 414 waived any right to claim a Section 18.03 bar to discipline resulting from the investigation.   In the Settlement Agreement, the Parties acknowledged the investigation into Martin's conduct was ongoing and agreed disciplinary action (and grievances) may result following the conclusion of the investigation, whenever that might be.  As part of the exchange, UNFI agreed not to contest the substantive arbitrability of any grievance challenging the merits of such discipline.  UNFI had no reason to waive such a critical right absent Local 414's waiver of any claimed Section 18.03 bar.

Arbitrator Richard Bales heard the grievance and issued his Award on August 18, 2021.  While Arbitrator Bales "commended" UNFI "for having taken Mr. Fields' allegation seriously and for having conducted a thorough investigation", he refused to "consider the merits of UNFI's disciplinary action" – i.e., whether or not Martin made the noose comment and lied to investigators.  Arbitrator Bales held that Martin

2

was not discharged in a timely manner under Article 18.03, that "UNFI waived its right" to discipline him, and that UNFI must reinstate Martin with full back pay, lost overtime, back benefits, and no loss of seniority even though Article 18.03 does not provide for such remedies and other provisions of the collective bargaining agreement explicitly state "there shall continue to be no discrimination against any individual because of race, color, religion, sex, national origin or age" and that discharge is appropriate under the circumstances of this case.

The Award conflicts with the well-defined, dominant public policy underlying federal and state anti-discrimination laws (reflected in the Parties' collective bargaining agreement) that employers maintain an inclusive workplace free of discrimination and threats of racial violence and take reasonable steps to prevent discrimination from occurring and, as UNFI did here, reoccurring. The Award also does not draw its essence from the collective bargaining agreement and violates the above-referenced Settlement Agreement.

Article 18.03 does not, and may not, trump these statutory and contractual policies, nor does it empower an arbitrator to do so. Indeed, no collective bargaining agreement may "waive" or be interpreted to "waive" an employer's right to discipline an employee for racially offensive misconduct. The courts will not enforce a collective bargaining agreement (including an arbitration award) that is contrary to public policy.

For these reasons, UNFI, by its counsel, brings this Complaint to vacate the Award and for breach of the Settlement Agreement. UNFI further seeks a declaratory judgement that, by entering into the Settlement Agreement, the Parties intended and agreed to modify or suspend the application of Article 18.03 to any discipline issued as a result of the pending grievance and that Martin's termination was issued in a timely manner.

## PARTIES

1.      UNFI is an "employer" within the meaning of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(2), and is engaged in "commerce" or "an industry affecting commerce" within the meaning of 29 U.S.C. §§ 152(6) and (7). UNFI is a Delaware corporation engaged in the wholesale grocery distribution business. Its headquarters are located at 313 Iron Horse Way, Providence, Rhode Island, 02908, and its operations include a distribution center in Fort Wayne, Indiana (the "FWDC").

2.      Local 414 is a "labor organization" within the meaning of 29 U.S.C. § 152(5). Local 414 is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of work. Local 414 is the exclusive bargaining representative of a bargaining unit consisting of hourly drivers, warehouse, maintenance, and sanitation

workers at the FWDC and maintains its principal office at 2644 Cass Street, Fort Wayne, Indiana, 46808.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction of this matter under the LMRA, 29 U.S.C. § 185, *et seq.* ("Section 301"), because the claims set forth herein allege violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce.

4.      This Court has jurisdiction of this matter under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, and 28 U.S.C. § 1331.

5.      The Declaratory Judgment Act, 28 U.S.C. § 2201, similarly authorizes federal district courts to, in a case of actual controversy within their jurisdiction, declare the rights and other legal relations of interested parties, where jurisdiction is conferred by the underlying claims.

6.      Venue in this District is proper under 29 U.S.C. § 1391(b)(1), 29 U.S.C. § 1391(b)(2), and 29 U.S.C. § 185 because this is a judicial district in which Local 414 resides and where the events giving rise to the grievance and Local 414's breach of contract occurred.

7.      This action is timely filed under Ind. Code § 34-4-57-13, which requires a party challenging an arbitration award in Indiana to file such challenge within 90 days of when a copy of the award is mailed to the party.  On August 18, 2021, UNFI

received notice of the Award by email. Less than 90 days have passed since UNFI received notice of the Award. A true and accurate copy of the Award is attached as *Exhibit 1*.

## FACTS

8.     UNFI and Local 414 were parties to a collective bargaining agreement (the "CBA") covering employees represented by Local 414 at the FWDC. A true and accurate copy of the CBA is attached as *Exhibit 2*.[1]

9.     Under Article 4.03(H) of the CBA, UNFI and Local 414 agreed "there shall continue to be no discrimination against any individual because of race, color, religion, sex, national origin or age."

10.    Under Article 11 of the CBA, Union Cooperation, Local 414 is contractually required to "uphold the rules and regulations of the Employer in regard to … conduct on the job, and all other reasonable rules and regulations established by the Employer."

11.    Article 12 of the CBA is a Management Rights clause that provides: "[UNFI] retains the right to alone manage the affairs of the business [including] the right to make such rules and regulations relating to operations and the conduct of employees as it shall deem advisable[.]"

---

[1] UNFI acquired SUPERVALU, INC. in or around October 2018. For consistency and ease of reference, this Complaint refers to the employer as UNFI throughout.

12.    Pursuant to its rights and obligations under the CBA, UNFI has maintained and consistently enforced a Discrimination and Harassment Free Workplace Policy (the "Policy").

13.    The Policy expressly prohibits "unlawful conduct and conduct that does not rise to the level of being unlawful," including: "(1) verbal conduct such as epithets, slurs, negative stereotyping, and jokes; (2) threatening, intimidating, or offensive acts that relate to an individual's protected characteristic; or (3) written or graphic material that denigrates or shows hostility towards an individual because of a protected characteristic."

14.    Employees who violate the Policy are subject to discipline, up to and including employment termination.

15.    Under Article 18 of the CBA, employees who engage in dishonesty of any kind are subject to employment termination after the first offense.

16.    Work Rule 3E of the CBA provides, in relevant part, that "dishonesty of any kind" is a dischargeable offense.

17.    Work Rule 3N of the CBA prohibits "threatening" or "intimidating" conduct or "malicious directed profanity" by an employee "while on Company property and/or working time."

18.    During all relevant times, UNFI employed Jerold Martin, Sidney Fields, and Justin Hogle as warehouse workers represented by Local 414.

19.     On June 24, 2020, Martin stated in the presence of Fields and Hogle that Martin previously made a noose, brought it into the FWDC, and left it on a co-worker's forklift.

20.     Fields was offended by Martin's racially offensive comment.   After consulting with his supervisor, Fields reported the matter to UNFI's Human Resources Department.

21.     On June 26, 2020, Human Resources representatives interviewed Martin with a Union Steward present.   When asked whether he stated, in the presence of Fields and Hogle, that he previously made a noose, brought it into the FWDC, and placed it on a co-worker's forklift, Martin evaded the question, refused to answer it, and ultimately claimed he did not remember.

22.     Shortly after Martin's interview, UNFI received reports that employees were taking retaliatory actions against Fields, who reported the statement, and Hogle, who confirmed Martin made the statement when he was interviewed by Human Resources.

23.     Because Martin had been evasive when talking to Human Resources and because retaliatory conduct had escalated the situation, UNFI hired a third-party investigation firm, Kroll, to conduct an investigation into the underlying complaint. Kroll began its investigation immediately upon being retained.

24.     Kroll's investigation was disrupted when, from July 23, 2020 to July 29, 2020, Local 414 went on strike at the FWDC.

25.     At the conclusion of the strike on July 29, 2020, UNFI and Local 414 entered into a Settlement Agreement.  A true and accurate copy of the Settlement Agreement is attached as *Exhibit 3*.

26.     Under the terms of the Settlement Agreement, UNFI and Local 414 specifically addressed the status of Kroll's investigation and the impact of Local 414's strike on the arbitrability of grievances related to any disciplinary action UNFI might take based on the investigation.   Indeed, the Settlement Agreement provided, *inter alia*, "There is an ongoing investigation of alleged incidents directed at Sidney Fields and other related graffiti written on bathroom walls" and "In the event there is a grievance arising from any discipline taken against any associate related to these incidents, UNFI will not dispute the arbitrability of these grievances."  Based on the clear language of the Settlement Agreement,  Local 414 waived any right it may otherwise have had to challenge the timeliness of any discipline imposed after the conclusion of the investigation, and UNFI waived its right to assert a substantive arbitrability bar to grievances challenging such discipline.   UNFI and Local 414 further agreed that "[d]isputes over the meaning of this Settlement Agreement shall be brought under Section 301 of the LMRA in a federal court of competent jurisdiction."  (*Exhibit 3*).

27.     When employees returned to work at the FWDC, Kroll resumed its investigation.  On August 12, 2020, Kroll interviewed Fields, Hogle, and Martin, among others.  Fields and Hogle again confirmed that Martin had made the racially offensive and threatening noose comment.  Martin again tried to avoid answering Kroll's questions but, toward the end of the interview, Martin for the first time denied making the comment.

28.     Kroll concluded its investigation and issued its findings on September 12, 2020.  Kroll concluded Martin made the comment about a noose in the presence of Fields and Hogle on June 24, 2020.

29.     On September 29, 2020, UNFI communicated its decision to Martin and Local 414 in writing, stating:

> The Company has decided to terminate your employment.  On June 24, 2020, you made a statement about placing a noose on the lift of a former warehouse employee.  You were also dishonest about having made this statement during our investigation of the matter.  Your conduct violated Work Rules 3E and 3N, our labor contract and policies, and interfered with our procedures for preventing and ensuring that complaints about such misconduct are investigated and dealt with in an appropriate manner.  Whether considered independently or collectively, your actions constitute just cause for your discharge.

30.     On September 30, 2020, Local 414 grieved Martin's termination, claiming it violated Articles 18.01, 18.02, and 18.03 of the CBA.

31.    Article 18.01 of the CBA provides "[t]he Employer shall not suspend or discharge any employee without just cause[.]"

32.    Article 18.02 of the CBA provides "[v]iolations on the part of the employee, of the rules and regulations of the Employer, or violations of the rules and regulations provided by municipal, state, or federal law … shall be considered just cause for disciplinary action."

33.    Article 18.03 of the CBA provides "[d]isciplinary action will be issued within ten (10) calendar days of the notice of the occurrence causing the discipline."

34.    Local 414, on Martin's behalf, pursued the grievance through the steps outlined in Article 14 of the CBA, leading to the arbitration hearing before Richard Bales on June 15, 2021.

35.    On August 11, 2021, the Parties submitted their post-hearing briefs to the Arbitrator.

36.    On August 18, 2021, Arbitrator Bales sustained the grievance. Despite finding that UNFI should be "commended for having taken Mr. Fields' allegation seriously and for having conducted a thorough investigation," the Arbitrator held that "[b]y failing to adhere to Article 18.03's ten-day deadline for issuing discipline, UNFI waived its right to issue discipline against Mr. Martin." (*Exhibit 1, p. 5.*).

37.    With respect to the Settlement Agreement, Arbitrator Bales held that its terms did not "justify waiving the time limit for issuing discipline" in Article 18.03.

38.     Arbitrator Bales concluded this finding made it unnecessary to "consider the merits of UNFI's disciplinary action." (*Id.*).

39.     The Arbitrator ordered UNFI to reinstate Martin with full back pay, including overtime, and restoration of seniority, benefits, and benefits contributions. (*Exhibit 1, p. 5.*).

## COUNT ONE
### (Vacatur of Arbitration Award – Public Policy)

40.     UNFI restates and realleges all of the allegations in the preceding paragraphs as if fully incorporated herein.

41.     A labor arbitration award may be vacated when the award conflicts with a well-defined, dominant public policy ascertainable from law and legal precedent. *See*, *e.g.*, *Titan Tire Corp. of Freeport, Inc. v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union*, *et al.*, 734 F.3d 708 (7th Cir. 2013) (vacating arbitrator's order to reinstate direct salary payments to union officials because it would require employer to violate federal law).

42.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), explicitly forbids racial discrimination in the workplace. *See* 42 U.S.C. § 2000e-2(a)(1).  Under Title VII, "employees are entitled to a workplace free from 'discriminatory intimidation, ridicule, and insult' motivated by the employees' membership in a protected class." *Harris v. Forklift Systems, Inc.*, 510

U.S. 17, 21-22 (1993).  Indiana Code § 22-9-1-1 *et seq.* also explicitly forbids racial discrimination in the workplace.

43.    The United States Supreme Court has recognized that voluntary compliance with Title VII is an explicit public policy that is well defined and dominant.  *See*, *e.g., W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 770 (1983); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987).

44.    Martin engaged in racially offensive and threatening misconduct when he first brought the noose to work (as he claimed he had done), and again when he loudly bragged for Fields and Hogle to hear that he made a noose and placed it on an employee's equipment.

45.    Martin was not sorry for his inflammatory comment (or underlying conduct), and, in fact, lied about making it during UNFI's investigation.

46.    Martin's misconduct unsurprisingly caused racial tension at the FWDC. In the history of America, few images of racial violence/intimidation rival the noose and its use by racists to lynch and terrorize African Americans.  *See*, *e.g., Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 635-36 (7th Cir. 2009) (the noose conveys a threat of racial violence because it is "a visceral symbol of the deaths of thousands of African-Americans at the hand of lynch mobs").

47.    Consistent with Title VII, the Indiana Code, the CBA, and the Policy, UNFI took Fields' complaint seriously, investigated it, and, based on its findings, took reasonable steps to prevent race discrimination and harassment from reoccurring by terminating Martin's employment.

48.    The Award holds that non-compliance with Article 18.03 waives UNFI's right to discharge an employee without regard to the nature of the employee's misconduct.  This holding conflicts with and undermines the explicit, well-defined, and dominant public policies underlying and reflected in Title VII, the Indiana Code, the CBA, and UNFI's Policy.  The courts may not enforce a collective bargaining agreement that is contrary to public policy.

49.    The Award, which reinstates Martin without any findings regarding, or consequence for, his misconduct is also contrary to public policy because it undermines, impedes, and/or prevents UNFI from taking measures to prevent and rectify racial discrimination and harassment in the workplace by enforcing its Policy and the anti-discrimination clause in the CBA.  *See*, *e.g., Stroehmann Bakeries, Inc., v. Local 776, Int'l Bhd. of Teamsters*, 969 F.2d 1436 (3rd Cir. 1992) where the Third Circuit vacated an arbitrator's award reinstating an employee based on an inadequate investigation without a determination on the merits of whether he was guilty of sexual harassment:

An award which fully reinstates an employee accused of sexual harassment without a determination that the harassment did not occur violates public

14

policy. Therefore, [the arbitrator] construed the Agreement between the parties in a manner that conflicts with the well-defined and dominant public policy concerning sexual harassment in the workplace and its prevention. His award would allow a person who may have committed sexual harassment to continue in the workplace without a determination of whether sexual harassment occurred. Certainly, it does not discourage sexual harassment. Instead, it undermines the employer's ability to fulfil its obligation to prevent and sanction sexual harassment in the workplace.

50.     The Award has the further effect of preventing UNFI from properly implementing its CBA and Policy by requiring UNFI to tolerate Martin's racially offensive misconduct.  The Seventh Circuit has stated, "[n]o [arbitration] award that required an employer to tolerate an ongoing violation of [Title VII] could be enforced." *EEOC v. Ind. Bell Tel. Co., Inc.*, 256 F.3d 516, 524 (7th Cir. 2001).

51.     The Award is contrary to public policy because it sanctions Martin's discriminatory conduct at the expense of other provisions of the CBA, has the effect of requiring that UNFI grant Martin what amounts to a paid vacation, and sends the wrong message to UNFI's diverse workforce, *i.e.,* that racially charged misconduct in the workplace is condoned.

52.     Because the Award conflicts with a well-defined, dominant public policy ascertainable from law and legal precedent, it must be vacated.

## COUNT TWO
## (Vacatur of Arbitration Award – Arbitrator Exceeded His Authority)

53.     UNFI restates and realleges all of the allegations in the preceding paragraphs as if fully incorporated herein.

54.     A labor arbitration award may be vacated when the award fails to draw its essence from the underlying agreements between the parties.  *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players*, 838 F.3d 826, 833 (7th Cir. 2016); *Anheuser-Busch, Inc. v. Beer Workers Local Union 744*, 280 F.3d 1133, 1140-42 (7th Cir. 2002); *Tootsie Roll Indus., Inc. v. Local Union No. 1*, 832 F.2d 81, 84 (7th Cir. 1987).

55.     The Award does not draw its essence from the underlying agreements because Arbitrator Bales exceeded the powers delegated to him by the Parties, including, without limitation, for the following reasons:

   a.     The Award contravenes the Settlement Agreement;

   b.     The Award contravenes Article 4.03(H) of the CBA in which the Parties agreed "there shall continue to be no discrimination against any individual because of race, color, religion, sex, national origin or age";

   c.     The Award contravenes Article 11 of the CBA, Union Cooperation, by which Local 414 is contractually required to "uphold the rules and regulations of the Employer in regard to … conduct on the job, and all other reasonable rules and regulations established by the Employer" which includes UNFI's Discrimination and Harassment Free Workplace Policy;

   d.     The Award contravenes Article 18 and Work Rule 3E of the CBA which provide that employees who engage in dishonesty of any kind are subject to employment termination after just the first offense; and

   e.     The Award contravenes Work Rule 3N of the CBA which prohibits "Threatening, intimidating, malicious directed

profanity while on Company property and/or working time."

56.     It is not plausible to suppose that the remedy Arbitrator Bales ordered for UNFI's alleged violation of Article 18.03 was within the contemplation of the Parties and hence authorized by the CBA.

## COUNT THREE
### (Breach of Settlement Agreement – Declaratory Judgment)

57.     UNFI restates and realleges all of the allegations in the preceding paragraphs as if fully incorporated herein.

58.     The Settlement Agreement is a contract between an employer and a labor organization representing employees in an industry affecting commerce within the meaning of Section 301 of the LMRA.

59.     The Settlement Agreement further provides that "Disputes over the meaning of this Settlement Agreement shall be brought under Section 301 of the LMRA in a federal court of competent jurisdiction."

60.     The Declaratory Judgment Act provides a court with the discretionary authority to adjudicate declaratory judgment actions.  28 U.S.C. § 2201(a).

61.     On June 24, 2020, Martin engaged in the conduct that ultimately caused UNFI to terminate his employment.

62.     Over a month later, on July 29, 2020, UNFI and Local 414 entered into a Settlement Agreement.  Under the Settlement Agreement, UNFI and Local 414 agreed to the following in relevant part:

    a.    UNFI's investigation into Martin's conduct was ongoing; and

    b.    If UNFI disciplined any associate based on information learned during the investigation and Local 414 grieved that discipline, UNFI would not dispute the arbitrability of such a grievance.

(*Exhibit 3, p. 1.*).

63.     The Parties knew any discipline issued to Martin would be issued more than 10 days after June 24, 2020 when they entered into the Settlement Agreement on July 29, 2020.  Local 414 also knew that its strike created a substantive arbitrability issue with respect to any grievance challenging such discipline.

64.     Under the plain language of the Settlement Agreement, the Parties not only agreed that UNFI retained the right to discipline Martin for his conduct toward Fields regardless of when such conduct occurred, the parties clearly contemplated and understood that such discipline might occur based on the ongoing investigation, as reflected by the terms of their agreement that if UNFI disciplined any associate based on information learned during the investigation, and Local 414 grieved the discipline, UNFI would not dispute the arbitrability of such a grievance.

65.    Local 414 did not raise at the time it entered into the Settlement Agreement any claim that UNFI had violated the timeliness provision contained in Section 18.03 of the CBA.  Nor did the Parties agree to include in the Settlement Agreement any language reserving to Local 414 any right it may otherwise have had to claim that UNFI had violated Section 18.03 of the CBA.  Thus, by entering into the Settlement Agreement and explicitly agreeing the investigation was ongoing, Local 414 waived any right it may otherwise have had to challenge the timeliness of any such discipline.

66.    The only logical interpretation of the combination of subsections (a) and (b) cited from the Settlement Agreement in Paragraph 62, above, is that Local 414 waived any right to claim a Section 18.03 bar to any subsequent discipline resulting from the investigation, as in those paragraphs, Local 414 not only acknowledged that the investigation was ongoing and therefore that discipline had not yet been imposed, but UNFI also agreed not to contest the arbitrability of any resulting discipline, which was clearly done in exchange and consideration for Local 414's waiver of any Section 18.03 timeliness claim.  There was no other reason for UNFI to waive its ability to contest the arbitrability of any discipline that resulted from the investigation.

67.    Though Local 414 waived the right to assert a timeliness argument when it entered into the Settlement Agreement, Local 414 asserted the argument

throughout the grievance process and ultimately convinced the Arbitrator to sustain the grievance on that basis alone.

68.     Because Local 414 violated the Settlement Agreement and obtained a favorable Award through its violation of the Settlement Agreement, a justiciable controversy exists for this Court to determine the rights of the Parties under the Settlement Agreement and in particular, whether, by entering into the Settlement Agreement, Local 414 waived its right to argue UNFI failed to timely issue discipline to Martin.

69.     UNFI requests that this Court enter a judgment declaring Local 414 has breached the Settlement Agreement and waived the right to argue UNFI failed to timely issue discipline to Martin.

## **PRAYER FOR RELIEF**

WHEREFORE, UNFI respectfully requests that this Court enter an order:

a.     Vacating and setting aside the Arbitrator's August 18, 2021 Award;

b.     A declaratory judgment that Local 414 has breached the Settlement Agreement; and

c.     Awarding such costs, fees, and other remedies as this Court deems appropriate.

Dated: November 12, 2021

By:  /s/ Brian L. Mosby

Brian L. Mosby, SBN 26096-29

ATTORNEY FOR THE PLAINTIFF,
UNITED NATURAL FOODS, INC.

LITTLER MENDELSON P.C.
111 Monument Circle
Suite 702
Indianapolis, IN 46204
Telephone:   317.287.3600
Facsimile:    317.636.0712
bmosby@litler.com

4864-9669-0435.1 / 062355-1323