# EXHIBIT 1



FMCS Case No. 211209-02142

| | |
|---|---|
| **In the Matter of Arbitration between:** | **Arbitrator: Richard Bales** |
| | **Grievant: Jerold Martin** |
| **Chauffeurs, Teamsters, and Helpers,** | |
| **Local Union No. 414** | Grievance No.: 52485 |
| | Grievance: Sept. 30, 2020 |
| and | Hearing: June 15, 2021 |
| | Brief Exchange: August 11, 2021 |
| **United Natural Foods, Inc.** | Award Date: August 18, 2021 |

## Award

### I. Facts

United Natural Foods, Inc. (UNFI) is a national grocery distribution business with operations across the country, including a distribution center in Fort Wayne, Indiana (the Fort Wayne Distribution Center or FWDC). Chauffeurs, Teamsters, and Helpers, Local Union No. 414 (the Union) represents the hourly drivers, warehouse, maintenance, and warehouse sanitation employees at the FWDC. During all relevant times, Sidney Fields, Justin Hogle, and Grievant Jerold Martin were warehouse workers represented by the Union. Relations between UNFI and the Union are governed by the parties' June 15, 2017-September 14, 2019 Collective Bargaining Agreement (CBA). Joint Exhibit 1.

Mr. Martin is a thirty-five-year warehouse employee with no disciplinary record of conduct similar to the alleged conduct giving rise to this Grievance.

On June 24, 2020, Dockman Sidney Fields overheard Mr. Martin say something that UNFI believes is a dischargeable offense. According to Mr. Fields, he reported Mr. Martin's comment to Human Resources that same day. UNFI Exhibit 1. According to the notes of Suzy Gatton, Human Resources Officer, Mr. Fields reported the incident the following day. UNFI Exhibit 2.

On June 25, 2020, Ms. Gatton and Teresa Merryman, both in UNFI's Human Resources Department, interviewed Mssrs. Fields and Hogle, both of whom corroborated the gist of Mr. Fields's complaint. On June 26, 2020, Mss. Gatto and Merryman interviewed Mr. Martin. According to their notes, Mr. Martin deflected questions about the alleged statement or said he could not remember making it. UNFI Exhibit 2.



At some point on or after July 2, 2020 (see UNFI Brief at 6), Mr. Fields began to perceive that UNFI employees were retaliating against him for having reported Mr. Martin to Human Resources.[1] UNFI then hired Kroll, an independent provider of business intelligence and investigations services, to investigate both Mr. Fields's allegation against Mr. Martin and the possibility that retaliatory conduct had been directed at Mr. Fields.

In late July, UNFI and the Union signed a Settlement Agreement conditioned on ratification of a new collective bargaining agreement. This Settlement Agreement provided, among other things:

> 2. Incident concerning certain actions towards Sidney Fields and related graffiti:
>    a.  There is an ongoing investigation of alleged incidents directed at Sidney Fields and other related graffiti written on bathroom walls.
>    b.  In the event there is a grievance arising from any discipline taken against any associate related to these incidents, UNFI will not dispute the arbitrability of these grievances.

UNFI Exhibit 5.

Representatives from Kroll interviewed Mssrs. Fields, Hogle, and Martin, as well as Custodian Dave Knerr, on August 12, 2020. UNFI Exhibit 1. Shortly after those interviews, UNFI instructed Kroll to expand the scope of its investigation to include other incidents of alleged retaliation against Mr. Fields. *Id*. Nothing in the record indicates Mr. Martin was responsible for any of those incidents. Kroll conducted additional interviews of these persons and others on August 19 and 25, 2020. *Id*.

Kroll wrote a summary of its interviews and its conclusions in a Report delivered to UNFI on September 12, 2020. *Id*. Kroll concluded that "the evidence supports the conclusion" that Mr. Martin made the comment as alleged by Mr. Fields. *Id*. Relying on this Report, UNFI discharged Mr. Martin by letter dated September 29, 2020. Joint Exhibit 3. This letter explained he was being discharged both for the comment and for dishonestly claiming throughout the investigation that either he had not made the comment or that he could not remember making it. *Id*.

## II. Issue

Whether UNFI discharged Mr. Martin for just cause; whether the discipline was timely issued; and if not, what is the remedy?

---

[1] Neither party disputes that inappropriate graffiti was written about Mr. Fields in an employee bathroom. *See, e.g.,* photos in UNFI Exhibit 1. However, it is unnecessary for the purpose of resolving this Grievance to determine whether the graffiti was retaliatory or who wrote it.



### III. Relevant CBA Provisions

**Article 14.01**

The aggrieved employee must contact his/her supervisor within ten (10) calendar days, with any occurrences, differences, disputes or complaints arising over the interpretation or application of the contents of this agreement. …

**Article 14.02**

In the event the Labor-Management Council, as described herein, cannot reach agreement, the grievance may be submitted by either party to the Federal Mediation and Conciliation Service. Such decision to move to F.M.C.S. must be done by the local parties within 30 days of the Step #3 impasse or the grievance is considered resolved. … The Arbitrator … shall, however, have no authority to add to, subtract from, or in any way modify the terms of this Agreement or any agreements made supplementary.

**Article 18.03**

Disciplinary action will be issued within ten (10) calendar days of the notice of the occurrence causing the discipline.  In the event the employee is not available to receive the discipline in a ten (10) day period, notice of discipline will be provided to the union (steward).  Company will follow with a certified letter to the employee who will have ten (10) days upon his/her return to work to file a grievance.  Certified letter must be postmarked within ten (10) days.

**SETTLEMENT AGREEMENT Between UNITED NATURAL FOODS, INC. ("UNFI") And LOCAL UNION No. 414 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS ("UNION") (July 29, 2020)**

2.  Incident concerning certain actions towards Sidney Fields and related graffiti:
    a.   There is an ongoing investigation of alleged incidents directed at Sidney Fields and other related graffiti written on bathroom walls.
    b.   In the event there is a grievance arising from any discipline taken against any associate related to these incidents, UNFI will not dispute the arbitrability of these grievances.

UNFI Exhibit 5.



## IV. Arguments and Analysis

Article 18.03 provides: "Disciplinary action will be issued within ten (10) calendar days of the notice of the occurrence causing the discipline." By every conceivable computation of time, UNFI missed this deadline. UNFI discharged Mr. Martin on September 29, 2020. Mr. Fields reported Mr. Martin's alleged comment to UNFI Human Resources on either June 24 or 25, 2020 – approximately 86 days earlier. It interviewed Mr. Martin and concluded he was being evasive or dishonest on June 26, 2020 – approximately 85 days earlier. It received the Kroll Report on September 12, 2020 – 17 days earlier.

Arbitrators consistently enforce contractual time limits related to the filing and processing of grievances. *See* Kenneth May, Elkouri & Elkouri How Arbitration Works (7th ed. 2012) at 5.7.A (5-26). The same principle applies to a contractual deadline for imposing discipline which would start the grievance process. Nonetheless, UNFI makes three arguments for not enforcing Article 18.03.

First, UNFI argues the Union, in the Settlement Agreement, "acknowledged the ongoing investigation, the possibility discipline would be issued and that grievances would follow". UNFI Brief at 2, 13. That much is true, but it does not justify waiving the time limit for issuing discipline. Paragraph 2(a) of the Settlement Agreement acknowledges the existence of an ongoing investigation, but neither party promises anything in Paragraph 2(a). In Paragraph 2(b), UNFI promises not to contest the arbitrability of any grievance arising from the investigation described in Paragraph 2(a). The Union promises nothing. UNFI apparently is arguing that the Union's waiver of Article 18.03 can be inferred from the Union's acknowledging the existence of an investigation. However, I see nothing in the Settlement Agreement that would support such an inference, especially in the face of clear contract language.

Second, UNFI argues Article 18.03 does not state that discipline issued outside the ten-day window is void, leaving the Arbitrator free to evaluate the facts and circumstances and decide whether any remedy is appropriate. *Id*. at 2, 13. This, however, is inconsistent with how arbitrators consistently treat contractual time deadlines. For example, Article 14.01 provides:

> The aggrieved employee must contact his/her supervisor within ten (10) calendar days, with any occurrences, differences, disputes or complaints arising over the interpretation or application of the contents of this agreement. …

If the Union had waited 85 or even 17 days after discharge to file this Grievance, I would have ruled the Grievance untimely, notwithstanding the absence of language in Article 14.01 saying something like "and if the employee/Union misses this deadline, the grievance will be deemed waived". Elkouri & Elkouri, *supra*. Likewise, if the Union had missed the 30-day deadline in Article 14.02 for escalating the Grievance to arbitration, I would have overruled the Grievance on that basis. Any contrary ruling would require the arbitrator to erase the relevant time deadlines from the CBA, which Article 14.02 emphatically says an arbitrator may not do.



Third, UNFI argues Mr. Martin was not prejudiced by the delay. I disagree. Like most limitation periods, Article 18.03 presumably was designed by the parties to give employees and the Union a sense of repose – UNFI cannot hold impending discipline over the head of an employee or the Union indefinitely, but must issue the discipline – or waive the right to impose it – within ten days. The delay itself prejudiced Mr. Martin and the Union, because it defeated the purpose of Article 18.03.

UNFI is to be commended for having taken Mr. Fields's allegation seriously and for having conducted a thorough investigation. However, once it became clear to UNFI that its investigation could not be completed within the ten days required by Article 18.03, it had two options if it wanted to continue the investigation without waiving potential discipline. First, it could have approached the Union and requested an extension of the ten-day deadline for this particular investigation. Given the shared interest of UNFI and the Union in employees not being disciplined for conduct they did not commit, one would expect the Union to readily agree to reasonable extensions of time. Second, UNFI presumably could have imposed the discipline within the ten-day deadline, but reserved the right to modify or withdraw the discipline subject to the results of its investigation. However, neither UNFI – nor this Arbitrator – has the contractual right to erase Article 18.03.

By failing to adhere to Article 18.03's ten-day deadline for issuing discipline, UNFI waived its right to issue discipline against Mr. Martin. The Union's Grievance is sustained on that basis, and there is no need to consider the merits of UNFI's disciplinary action.

## V. Disposition

For the reasons stated above, I find UNFI violated Article 18.03 by failing to issue discipline against Mr. Martin within the ten-day deadline. The Grievance is sustained. UNFI is directed to reinstate Mr. Martin with full back pay; lost overtime; and restoration of seniority, benefits, and contributions; for the duration of his discharge. See article 14.03. I retain jurisdiction for the limited purpose of resolving any disputes the parties may have about calculating damages, or otherwise applying or interpreting this Award.

_____
Richard A. Bales, Arbitrator