UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED NATURAL FOODS, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | CASE NO.1:21 CV 0420 HAB-SLC |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 414, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |
| | ) | |

## OPINION AND ORDER

This is round two of cases flowing from a breakdown in collective bargaining agreement negotiations between Plaintiff, United Natural Foods, Inc. (UNFI), and Defendant, International Brotherhood of Teamsters Local 414 (Local 414). The first set of cases involved the interpretation of the CBA and the validity of two labor strikes by Local 414 at UNFI's Fort Wayne Distribution Center (FWDC). This time the go-round involves the interpretation of a Settlement Agreement the parties entered into as part of the strike's resolution. Before the Court is Local 414's Motion to Dismiss Count 3 of the Complaint. (ECF No. 15). The matter is fully briefed and ripe for consideration. The Motion to Dismiss Count 3 will be DENIED.

## FACTUAL BACKGROUND

UNFI is a Delaware corporation engaged in the wholesale grocery distribution business. (Compl. ¶1, ECF No. 1). Local 414 is a labor organization in which employees participate and which deals with employers about grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of work. (*Id.* ¶2). Local 414 maintains its principal office in Fort

Wayne, Indiana and represents drivers, warehouse, maintenance, and warehouse sanitation employees at the FWDC.

The parties were signatories to a CBA covering employees represented by Local 414 at the FWDC. (Compl. ¶8). Article 4.03(H) of the CBA is an antidiscrimination clause agreeing that "there shall continue to be no discrimination against any individual because of race, color, religion, sex, national origin or age." (*Id.* ¶9). The CBA requires Local 414 to "uphold the rules and regulations of the Employer in regard to … conduct on the job, and all other reasonable rules and regulations established by the Employer" (*Id.* ¶10) and, in turn, authorizes UNFI to manage its business affairs and make rules and regulations for its operations and conduct of its employees. (*Id.* ¶11).

As part of its obligation, UNFI maintains a Discrimination and Harassment Free Workplace Policy ("the Policy"). The Policy prohibits "unlawful conduct and conduct that does not rise to the level of being unlawful," including: (1) verbal conduct such as epithets, slurs, negative stereotyping, and jokes; (2) threatening, intimidating, or offensive acts that relate to an individual's protected characteristic; or (3) written or graphic material that denigrates or shows hostility towards an individual because of a protected characteristic." (Compl. ¶13). Violation of this Policy subjects an employee to discipline which can include termination. Additionally, Article 18 of the CBA subjects employees who engage in dishonesty with termination after a single offense. Various work rules reinforce the above rules for employees, instructing them that dishonesty is a dischargeable offense and threatening or intimidating conduct is prohibited. (Compl. ¶¶14-17).

During the times relevant to the Complaint, UNFI employed Jerold Martin (Martin), Sidney Fields (Fields), and Justin Hogle (Hogle) as warehouse workers represented by Local 414. In late June 2020, Fields reported to UNFI's human resources (HR) department that Martin had

made a racially insensitive comment in Fields' presence.[1] On June 26, 2020, UNFI's HR officials interviewed Martin with a union steward present on the alleged comment. (Compl. ¶21). Asked if he made the statement, Martin became evasive, refused to answer, and claimed he did not remember. After Martin's interview, UNFI received reports that employees were retaliating against Fields and Hogle for reporting the incident. UNFI then hired a third-party investigation firm to investigate the underlying complaint. (*Id.* ¶23).

From July 23, 2020, through July 29, 2020, Local 414 engaged in a strike at the FWDC. After the strike, Local 414 and UNFI entered into a Settlement Agreement ("the Agreement") which referenced the ongoing third-party investigation into "alleged incidents directed at … Fields and other related graffiti written on bathroom walls" and provided that "[i]n the event there is a grievance arising from any discipline taken against any associate related to these incidents, UNFI will not dispute the arbitrability of these grievances." (Agreement, ECF No. 1-2 at 2). The parties also agreed that "[d]isputes over the meaning of the Settlement Agreement shall be brought under Section 301 of the LMRA in a federal court of competent jurisdiction." (*Id.*)

Following its investigation of the incident, on September 29, 2020, UNFI discharged Martin for his conduct on June 24 and for dishonesty during the investigation. Local 414, in turn, filed a grievance protesting Martin's discharge. The basis for the grievance was that UNFI's termination of Martin violated three separate provisions of Article 18 of the CBA. Pertinent now, Local 414 asserted that Martin's discipline was untimely under Article 18.03 which requires any disciplinary action by UNFI to be issued "within ten (10) calendar days of the notice of the occurrence causing the discipline." Local 414 pursued the grievance under the pre-arbitration steps of Article 14 of the CBA. When those steps did not resolve the grievance, the parties submitted

---

[1] Martin allegedly stated that sometime previously he made a noose, brought it into the FWDC, and left it on a coworker's forklift. (Compl. ¶21).

the grievance to arbitration. Arbitrator Richard Bales (the Arbitrator) conducted a hearing and decided the grievance. The Arbitrator sustained Local 414's grievance in a written decision writing:

> First, UNFI argues the Union, in the Settlement Agreement, "acknowledged the ongoing investigation, the possibility discipline would be issued and that grievances would follow" …. That much is true, but it does not justify waiving the time limit for issuing discipline. Paragraph 2(a) of the Settlement Agreement acknowledges the existence of an ongoing investigation, but neither party promises anything in Paragraph 2(a). In Paragraph 2(b), UNFI promises not to contest the arbitrability of any grievance arising from the investigation described in Paragraph 2(a). The Union promises nothing. UNFI apparently is arguing that the Union's waiver of Article 18.03 can be inferred from the Union's acknowledging the existence of an investigation. However, I see nothing in the Settlement Agreement that would support such an inference, especially in the face of clear contract language.

(Arbitration Award, ECF No. 1-1 at 5). Given the above finding, the Arbitrator did not reach the merits of the grievance. As a remedy for the contract violation, the Arbitrator ordered UNFI to reinstate Martin with full backpay, including overtime, and to restore his seniority, benefits, and contributions. (*Id.* at 6).

Unhappy with this decision, UNFI filed a three-count Complaint seeking vacatur of the arbitration award. Count 1 asserts that the arbitration award and the requirement that Martin be reinstated conflict with public policy prohibiting racial discrimination in employment. Count 2 asserts that the arbitrator exceeded his authority and so the award fails to draw its essence from the agreement between the parties. Count 3 is a breach of contract claim under §301 of the LMRA seeking a declaratory judgment that Local 414 breached the Settlement Agreement when it asserted the timeliness of the discipline in the arbitration proceeding. Local 414 has now moved to dismiss Count 3 arguing that no justiciable controversy supports warranting declaratory relief.

## **DISCUSSION**

"Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019). The Declaratory Judgment Act ("the Act") permits the Court to issue declaratory judgments where "there is an actual controversy between two parties." *NewPage Wis. Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. and Serv. Workers Int'l Union, AFL–CIO/CLC*, 651 F.3d 775, 776 (7th Cir. 2011) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007); 28 U.S.C. § 2201(a). The phrase "case of actual controversy" in the Act refers to the type of "Cases" and "Controversies" that are justiciable under Article III of the United States Constitution. *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). For a suit for declaratory relief to be proper, it must be "definite and concrete, touching the legal relations of parties having adverse legal interests," must "be 'real and substantial,'" and must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Local 414 asserts that there is no actual controversy in Count 3 between it and UNFI over the meaning of the Settlement Agreement because that issue was resolved in the arbitration proceeding. And even if there is a present case or controversy, Local 414 advocates that the Court should decline to exercise the discretion afforded under the Act to entertain UNFI's request for relief. A review of the Complaint demonstrates why neither of these arguments can succeed.

5

First, UNFI has plausibly alleged the existence of a breach of contract action under §301 of the LMRA in Count 3 and a potential entitlement to relief on that claim. Section 301 refers to "suits for violation of contracts between an employer and a labor organization." 29 U.S.C, § 185(a). Although most § 301 litigation involves alleged violations of CBAs, the Supreme Court has held that "[a] federal forum was provided for actions on other labor contracts besides collective bargaining contracts." *Retail Clerks Int'l Ass'n, Loc. Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 26 (1962). Thus, violations of settlement agreements between an employer and a union fall within section 301's grasp. *Olson v. Bemis Co.*, 800 F.3d 296, 301 (7th Cir. 2015).

In Count 3, UNFI alleges precisely that: Local 414 violated the Settlement Agreement. UNFI pleads the existence of a contract (i.e., the Settlement Agreement); an alleged breach of that contract (i.e., the assertion of a timeliness defense in the arbitration contradicted the Settlement Agreement); and resultant damages (i.e., an adverse arbitration award). *See* 29 U.S.C. §185. These allegations establish a real and immediate controversy within this Court's jurisdiction, not a hypothetical or speculative right to relief. Indeed, "[a] declaratory judgment action is a useful procedure for determining the rights and obligations of parties to a contract. *Palos Cmty. Hosp. v. Diversified Clinical Servs., Inc.,* No., 2016 WL 2984342, at *4 (N.D. Ill. May 24, 2016).

Extrapolated further, UNFI properly pleads that the Settlement Agreement entered into by the parties provides that disputes over its interpretation would be brought in federal court under §301 of the Labor Management Relations Act (LMRA). UNFI pleads that under the Settlement Agreement, the parties acknowledged an investigation was ongoing and that any decision to discipline Martin could be grieved and submitted to arbitration under the CBA's provisions. UNFI asserts that because Local 414 knew an investigation was ongoing, it knew that the Settlement Agreement waived any right it may otherwise have to challenge the timeliness of Martin's

6

discipline. Thus, it asserts when Local 414 raised the timeliness of Martin's discipline in the arbitration proceeding, it breached the Settlement Agreement. These allegations sufficiently allege a "substantial controversy, between parties having adverse legal interests." *Maryland Cas. Co.,* 312 U.S. at 273

Local 414 sees it differently. It asserts that the arbitrator decided the timeliness issue in the arbitration and thus there is no "case or controversy" between the parties over the Settlement Agreement. (ECF No. 16 at 2 – "There was a controversy at the time of the arbitration, but the Arbitrator resolved it in the Union's favor."). It is true that the Arbitrator decided the issue of timeliness; but this begs the very question in this lawsuit of whether the Arbitrator exceeded his authority in doing so. The issues in the arbitration were: "Whether UNFI discharged Mr. Martin for just cause; whether the disciple was timely issued; and, if not, what is the remedy?" (Arbitration Award at 3). The Arbitrator was not tasked with deciding the central issue in Count 3 which is whether Local 414 breached the Settlement Agreement by making the timeliness argument. As UNFI points out, the breach of contract claim under §301 of the LMRA was not subject to arbitration by the express terms of the Settlement Agreement. The Settlement Agreement provided that any dispute over its terms must be resolved in federal court. (Settlement Agreement at 3: "This Settlement Agreement shall not be admissible in any proceeding other than a proceeding to enforce it terms. Disputes over the meaning of this Settlement Agreement shall be brought under Section 301 of the LMRA in a federal court of competent jurisdiction."). If a dispute over the Settlement Agreement's terms arose in the arbitration, UNFI asserts that this is a case or controversy to be resolved in the first instance by the federal courts.[2] Again, then, UNFI asserts a substantial

---

[2] For instance, the parties could have stayed the arbitration proceeding pending the resolution of the dispute over the proper interpretation of the Settlement Agreement. That said, Local 414 argues that the issue of the timeliness of the discipline was before the Arbitrator. Whether time limits in the CBA for discipline were met was certainly a proper subject before the Arbitrator. For instance, the Arbitrator could

controversy between adverse parties which is justiciable in this forum. The Court agrees and finds that a proper "case or controversy" exists that requires the Court to declare the rights and obligations of the parties.

But there's more. Under the Act, this Court has discretion "to stay or to dismiss an action seeking a declaratory judgment" based on "considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The Act also states: "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C. § 2201(a) (emphasis added). Thus, federal courts have discretion to hear a declaratory judgment action. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 746-47 (7th Cir. 1987). "[I]f the declaratory judgment will clarify and settle the legal relations at issue and afford parties relief from insecurity and uncertainty, the declaratory judgment action is usually heard." *Intervisual Communications, Inc. v. Volkert*, 975 F. Supp. 1092, 1099 (N.D. Ill. 1997).

Local 414 urges the Court to exercise its discretion to decline to hear the declaratory judgment action because federal labor policy "prefers that labor-management disputes be resolved in arbitration." (ECF No. 21 at 8). Generally speaking, this is a true statement. But "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960); *Granite Rock Co. v. Int'l Bhd of Teamsters*, 561 U.S. 287, 299 (2010) ("Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes – but only

---

have determined that the discipline did not occur within the CBA's 10-day requirement. But whether Local 414 waived those time limits in the Settlement Agreement was a topic reserved by the Settlement Agreement for the federal courts.

those disputes – that the parties have agreed to submit to arbitration."). The parties agreed to two things in the Settlement Agreement: (1) to arbitrate any grievance flowing from the incidents involving Martin; and (2) to submit disputes over the meaning of the Settlement Agreement to a federal court of competent jurisdiction. Having agreed to submit disputes over the Settlement Agreement to a federal court in exchange for retention of its right to arbitrate the grievance, it is disingenuous for Local 414 to now assert public policy favoring arbitration should win out over a clear agreement to the contrary. This Court will exercise its discretion to hear the latter controversy. The Motion to Dismiss Count 3 is DENIED.

## CONCLUSION

Based on the reasoning above, Local 414's Motion to Dismiss (ECF No. 15) is DENIED. SO ORDERED on September 7, 2022.

s/ *Holly A. Brady*  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT